UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

- against -

MUSTAFA OZSUSAMLAR and
OSMAN OZSUSAMLAR,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/06

**OPINION AND ORDER**

S1 05 Cr. 1077 (PKL)

---

**APPEARANCES**

MICHAEL J. GARCIA, ESQ.
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Miram E. Rocah, Esq.
Alexander H. Southwell, Esq.

Attorneys for United States

ROBERT ALEXANDER OSUNA, ESQ.
Law Firm of Robert Osuna, P.C
11 Park Place, Suite 600
New York, NY 10007

Attorney for Defendant

**LEISURE, District Judge:**

On April 20, 2006, following a one-week trial, defendants Musfafa Ozsusamlar ("Mustafa") and Osman Ozsusamlar ("Osman") were convicted of one count of conspiracy to commit a murder-for-hire, in violation of 18 U.S.C. § 1958(b); one count of murder-for-hire, in violation of 18 U.S.C. §§ 1958, 2; and one count of conspiracy to commit extortion, in violation of 18 U.S.C. § 1951. Defendant Osman now moves for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the following reasons, the motion is denied.

## BACKGROUND

The defendants are father and son; Mustafa is the father and Osman is the son. The three-count indictment charged and the Government adduced evidence at trial, through the use of an undercover agent and a government informant, that Mustafa and Osman conspired to hire someone to collect a debt from, and subsequently murder, a husband and wife. Based on the Government's evidence, which included witness testimony and audiotape recordings and transcripts, the jury found the defendants guilty of murder-for-hire, conspiracy to commit murder-for-hire, and conspiracy to commit extortion.

Specifically, the evidence at trial established that Mustafa told a cooperating witness named Mohamed Mabrouk at the Metropolitan Correction Center (the "MCC")[1] that he sought assistance in locating someone who could kill a person (the "Victim") who owed him approximately $283,000, offering to pay the killer ten percent of the money collected from the Victim. (Trial Tr. 142:7-14, 152:7-21.) Mabrouk indicated to Mustafa that he was interested in the job, and then reported this conversation to the Government. (Tr. 143:22-148:4.) Mabrouk, at

---

[1] Mustafa was incarcerated at the MCC while awaiting sentencing on a different matter.

the Government's behest, provided Mustafa with the telephone number for a Federal Bureau of Investigations ("FBI") agent who, using the name "Joe," posed as Mabrouk's associate by pretending to arrange for the collection of the debt and the Victim's murder. (Tr. 60:3-61:18, 160:1-161:11.) Mustafa passed on this information to his son, Osman (Gov't Exs. 13, 13T; Tr. 63:3-18), who then had a number of conversations with "Joe" regarding the scheme (Gov't Exs. 21-22, 21T, 22T-1, 22T-2). Finally, "Joe" called Osman to tell him that the job was done and that he had the money, and the two made arrangements to meet. (Gov't Exs. 23, 23T-2, 23T-3; Tr. 320:5-321:18; 324:9-325:15.) Osman was arrested when he arrived at the agreed-upon location that night (Tr. 326:17-19, 410:16-411:7), and subsequently made a number of admissions and false exculpatory statements (Tr. 411:9-414:6).

## DISCUSSION

In support of his motion for a judgment of acquittal pursuant to Rule 29, defendant argues that the evidence was insufficient to support his conviction for conspiracy to commit murder-for-hire. In support of his motion for a new trial pursuant to Rule 33, defendant argues that the Court's admission of certain prior-act evidence deprived defendant of a fair trial.

I. Standards for Rule 29 and Rule 33

A. Rule 29 Standard

When a defendant moves pursuant to Rule 29, the district court must determine, based on all of the relevant evidence, whether a rational juror "might fairly conclude guilt beyond a reasonable doubt." United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotations omitted). The district court must draw all reasonable inferences in favor of the Government, see id., and must resolve all issues of credibility in favor of the jury's verdict, see United States v. Weiss, 930 F.2d 185, 191 (2d Cir. 1991); United States v. Roldan-Zapata, 916

2

F.2d 795, 802 (2d Cir. 1990). To succeed on the motion, a defendant must persuade the court that, "viewing the evidence in the light most favorable to the government, . . . no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." United States v. Leslie, 103 F.3d 1093, 1100 (2d Cir. 1997) (McLaughlin, J.) (internal quotations omitted). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." United States v. Scarpa, 913 F.2d 993, 1003 (2d Cir. 1990) (internal quotations omitted); see also United States v. Cervone, 907 F.2d 332, 343 (2d Cir. 1990); United States v. Tillem, 906 F.2d 814, 821 (2d Cir. 1990) (stating that motions challenging the sufficiency of the evidence for a conviction "rarely carry the day").

B.  Rule 33 Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). It confers broad discretion upon a trial court to set aside a jury verdict and order a new trial in order to avert a perceived miscarriage of justice. See United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). A defendant seeking a new trial bears the burden of demonstrating the "essential unfairness of the [original] trial." United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956). In adjudicating a Rule 33 motion, a court is entitled to weigh the evidence and, in so doing, to evaluate the credibility of witnesses. See Sanchez, 969 F.2d at 1413. A court, however, should exercise its discretion under Rule 33 sparingly, granting a new trial only in exceptional circumstances. See id. at 1414. Indeed, "motions for a new trial are disfavored in this Circuit." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995).

3

II. Defendant's Arguments

   A. There Was Sufficient Evidence to Support Defendant's Conviction

Defendant first argues that there was insufficient evidence to support a reasonable inference that he knowingly and unlawfully joined a conspiracy with Mustafa to commit murder for hire. (Osuna Aff. ¶ 12.) According to defendant, the Government presented no evidence that the conspiracy was ever discussed between Mustafa and Osman. Therefore, defendant argues, the jury was led to speculate, rather than make reasonable inferences, as to whether such a conversation occurred. (Osuna Aff. ¶ 3.)

As stated above, a defendant challenging the sufficiency of the evidence "bears a very heavy burden." United States v. Scarpa, 913 F.2d 993, 1003 (2d Cir. 1990) (internal quotations omitted). Defendant has failed to carry that burden. The Government was not required to present the jury with evidence that Mustafa and Osman had a conversation in which they explicitly stated their intent to commit murder-for-hire. Rather, "the jury's verdict may be based entirely on circumstantial evidence." United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995) (citing United States v. Libera, 989 F.2d 596, 601 (2d Cir. 1993)). "Such evidence, of course, is of no less intrinsic worth than direct evidence and, indeed, circumstantial evidence alone may support a guilty verdict." United States v. Espaillet, 380 F.3d 713, 719 (2d Cir. 2004) (citing Martinez, 54 F.3d at 1043). The Court finds that the evidence presented by the Government was sufficient for the jury to conclude that defendant agreed to plan a murder-for-hire.

First, as described above, the jury viewed transcripts of numerous telephone conversations between Mustafa and Osman that, within the context of all the evidence presented, allowed the jury to draw a reasonable inference that Osman entered into a criminal agreement

4

with his father. On these telephone calls, Mustafa instructed Osman to obtain, and Osman agreed to provide, the Victim's home and business addresses (Gov't Exs. 10-12, 10T-12T; Tr. 52:10-57:18); Mustafa supplied Osman with the name and telephone number for "Joe"—the same telephone number and name that the cooperating witness, Mabrouk, earlier had provided Mustafa at the Government's direction (Gov't Exs. 13, 13T; Tr. 63:1-14); Mustafa instructed Osman to call "Joe" from his own telephone, telling him that "[t]hey have talked to the person who is going to solve that problem" (Gov't Exs. 13, 13T; Tr. 63:15-18), and that he should he should tell "Joe" that he was Mustafa's son (Gov't Exs. 14, 14T; Tr. 65:14-16) and that Mustafa was "with Muhammed." (Gov't Exs. 14, 14T; Tr. 66:8).

The jury also listened to recordings of conversations, which took place both in face-to-face meetings and via telephone, between Osman and "Joe." In one such conversation, which occurred during a meeting at a Manhattan coffee shop, "Joe" told Osman that he "[had] people up in the Bronx" who could "do the job," that he would "keep [his] hands clean," and that he understood that he would receive ten percent of the debt collected from the Victim. (Gov't Exs. 21, 21T; Tr. 299:14-311:13.) Osman told "Joe" that he would be willing to pay another five percent. (Gov't Exs. 21, 21T; Tr. 311:2-6.) The two discussed the location of the Victim's home, with Osman telling the agent to be careful because the building next door might have security cameras and the police department was located only a few blocks away. (Gov't Exs. 21, 21T; Tr. 310:10-22.) At one point, Osman responded to the agent's query on whether he should "get rid of" the Victim and/or the Victim's wife by saying, "I don't know but ah maybe tomorrow he and she kill the, I don't care, I need the money. I need the money first." (Gov't Exs. 21, 21T.) Later, Osman laughed and responded affirmatively when the agent said that it was important to get the money first and then to get rid of the Victim and the Victim's wife

5

without leaving a trace. (Gov't Exs. 21, 21T.) In a subsequent telephone conversation, "Joe" told Osman that his "people" would "kill both of them," and when "Joe" asked Osman if he understood, Osman responded affirmatively. (Gov't Exs. 22, 22T-2; Tr. 319:6-17.) On October 6, 2005, "Joe" called Osman to tell him that the job was done and that he had the money. (Gov't Exs. 23, 23T-2, 23T-3; Tr. 320:8-321:1, 324:14-19.) The two made arrangements to meet (Gov't Exs. 23, 23T-2, 23T-3; Tr. 321:7-18, 324:22-325:15), and Osman was arrested when he arrived at the agreed-upon location that night (Tr. 326:17-19; 410:16-411:7).

The Government also presented evidence of admissions and false exculpatory statements made by Osman following his arrest. Specifically, there was testimony that Osman had admitted to knowing the Victim and his wife and to having loaned $150,000 to the Victim's wife, which money had not been repaid. (Tr. 412:10-17.) Testimony also established that Osman initially stated that that night was the first time he met "Joe," but later said he might have met "Joe" on a prior occasion but could not recall when. (Tr. 412:24-413:5.) Osman also stated that he was initially contacted by "Joe" and that he did not know how "Joe" came into possession of his telephone number. (Tr. 413:6-11.) In addition, Osman said that "Joe" had offered "out of the blue" to collect money from the Victim and the Victim's wife in exchange for ten percent of the proceeds, and that when "Joe" stated that he would kill the Victim, Osman told "Joe" not to. (Tr. 413:9-21, 414:2-6.) Osman claimed that Mustafa had not provided him with the telephone number for "Joe," but later said that he was not sure whether Mustafa had provided him with the number. (Tr. 413:24-414:1.)

In light of this evidence and drawing all reasonable inferences in favor of the Government, the Court is not persuaded that "no rational trier of fact could have found the

essential elements of the crime charged beyond a reasonable doubt." Leslie, 103 F.3d at 1100. Therefore, the Court denies defendant's motion for a judgment of acquittal.[2]

### B. The Admission of the Rule 404(b) Evidence against Mustafa Does Not Warrant a New Trial

Defendant next argues that the admission of prior-act evidence against Mustafa created spillover prejudice against Osman and justifies a new trial. On April 18, 2006, the Court granted the Government's motion to introduce, during its case-in-chief, evidence that Mustafa was involved in a previous extortion that included threats of violence. United States v. Ozsusamlar, 428 F. Supp. 2d 161 (S.D.N.Y. 2006). Specifically, the Court admitted into evidence portions of the prior sworn testimony of Adnan Dikili, a witness who testified at a 1995 jury trial of Mustafa in the District of New Jersey on one count of conspiracy to take hostages[3] and one count of hostage taking, in addition to several counts of alien smuggling. This prior sworn testimony was to the effect that Mustafa had arranged for a woman, Nermin Durson, to be smuggled into the United States for a fee, took her to New Jersey, and then demanded additional money from her boyfriend, Mr. Dikili, who was living in Turkey at that time, before he would release her unharmed. (Gov't Ex. 41; Tr. 510:3-516:11.)

As an initial matter, the Court finds no merit in defendant's argument that he was unfairly surprised by the Court's decision to allow the Government to introduce the prior-act evidence in its case-in-chief. The Court previously had denied the Government's motion to introduce this evidence on the ground that it was premature, as Mustafa had not yet placed his intent at issue.

---

[2] Defendant, in his moving papers, explicitly challenges the sufficiency of evidence only with respect to his conviction for conspiracy to commit murder-for-hire. However, as the essence of defendant's argument is that there was no evidence that he possessed the requisite *mens rea* to join the conspiracy, the Court construes his Rule 29 motion as also applying to his conviction for the substantive crime of murder-for-hire. Thus the Court's finding that the Government presented sufficient evidence for the jury to convict the defendant applies to both his conviction for conspiracy to commit murder-for-hire and the substantive crime. Defendant has not challenged in any way the sufficiency of evidence for his conviction for conspiracy to commit extortion.

[3] The uncharged, but alleged, co-conspirator in that action was Osman.

7

United States v. Ozsusamlar, No. S1 05 Cr. 1077, 2006 WL 931701 (S.D.N.Y. April 11, 2006). In doing so, the Court noted that "[i]t appears at this stage that the Government offers Dikili's and Durson's testimony for a permissible purpose other than to show Mustafa's propensity to commit the crimes charged," *viz.*, for the purpose of showing that Mustafa possessed the requisite intent or knowledge. Id. at *3. The Court also made clear that the Government might renew its request if developments at trial indicated that Mustafa's intent was at issue, and that Mustafa could "forestall completely the introduction of this prior act evidence if he indicates with sufficient clarity that he will not contest the elements of Mustafa's knowledge and intent of the charged crimes." Id. at *3 n.3. Defendant therefore had ample notice of the possibility that the Court might allow the Government to introduce the prior-act evidence if it found that, based on events at trial, Mustafa's intent was at issue.[4]

Defendant's argument that he suffered "spillover" prejudice also fails. While the Second Circuit recognizes the potential that a defendant may incur spillover prejudice in a joint trial at which prior-act evidence is offered against a co-defendant, United States v. Gelzer, 50 F.3d 1133, 1140 (2d Cir. 1995) ("Where allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause to his co-defendants is an appropriate consideration for Rule 403 balancing and may result in the exclusion of such evidence in the joint trial."), a limiting instruction usually suffices to guard against unfair prejudice where the prior-act evidence does not include or implicate another co-defendant's

---

[4] As the Court noted in its April 18, 2006 Opinion and Order, "[a] defendant that seeks to prevent the introduction of prior-act evidence on the issue of intent must express with 'sufficient clarity' its desire to do so." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 168 (S.D.N.Y. 2006) (quoting United States v. Colon, 880 F.2d 650, 657 (2d Cir. 1989)). The Court found that Mustafa had failed to remove the issue of intent because his theory of defense rested exclusively on attacking the credibility of the Government's witnesses. Id. In such cases, the Court noted, prior-act evidence offered for the purpose of showing a defendant's intent is admissible "because 'an attack on the credibility of the government's witnesses is essentially a claim that the government has not met its burden of proof, a proposition quite different from either a claim of innocence or a concession that the government need not prove the defendant's knowledge and intent.'" Id. (quoting United States v. Tarricone, 996 F.2d 1414, 1422 (2d Cir. 1993)).

8

involvement in the prior act, see, e.g., United States v. Rosenwasser, 550 F.2d 806, 813-14 (2d Cir. 1977) ("[W]hen similar act evidence is admitted in a multiple defendant trial, it is clear that the co-defendant claiming prejudice could not have been involved in the similar offense. In those circumstances, there is little doubt that a cautionary instruction is sufficient to preserve the co-defendant's right to a fair trial.").

The prior-act evidence admitted at trial did not concern Osman in any way. The Government offered the evidence against Mustafa, not Osman. The Government redacted any reference to Osman from the transcript of the 1995 trial testimony that was introduced into evidence. As the Court found in its April 18, 2006 Opinion and Order, the evidence did not implicate Osman in the alleged hostage taking that was the subject of the 1995 trial,[5] and therefore a proper limiting instruction would adequately guard against the possibility of any collateral prejudice to Osman. United States v. Ozsusamlar, 428 F. Supp. 2d 161, 174 (S.D.N.Y. 2006). The Court repeatedly instructed the jury that it was not to consider the prior-act evidence against Osman, giving this instruction on four occasions: immediately prior to the evidence's admission (Tr. 507:7-509:3), immediately following the evidence's admission (Tr. 529:21-531:6), and at two points during the Court's charge to the jury (Tr. 670:12-20, 702:17-703:14). Although defendant suggests that a reference in the prior sworn testimony to the word "us"[6] led the jury to believe that Osman was involved in the prior act (Osuna Aff. ¶ 25), the jury could

---

[5] The Government initially sought to admit the prior sworn testimony of both Mr. Dikili and Ms. Durson in its entirety. See id. at 174. In its April 18, 2006 Opinion and Order, the Court noted that the 404(b) evidence, as then proffered by the Government, "touches on Osman's involvement in Mustafa's alien smuggling ring, but does not implicate him in the alleged hostage taking." Id. Following the Court's decision to admit the 404(b) evidence, and after discussion with defense counsel (Tr. 497:13-499:7), the Government chose to offer into evidence only an eight-page portion of Mr. Durson's testimony that related only to Mustafa's alleged hostage taking, (Gov't Ex. 41).
[6] The testimony to which defendant alludes reads as follows:

> Q: Tell me, though, what did Mustafa Ozsusamlar say to you on the telephone the first time that you were in Bogota when he asked for more money?
> A: You're going to go to Turkey and then you're going to give us [a promissory note]. I will send Nermin back. If you don't give me this, you might as well forget her.

(Tr. 512:14-19.)

9

have concluded that this reference related to any number of other people. Even if the jury had inferred that the term "us" referred to Osman—and there is no evidence that it made such an inference—this reference would have been cured by the repeated limiting instructions that the Court gave the jury. "Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions." United States v. Downing, 297 F.3d 52, 59-60 (2d Cir. 2002) (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions, and juries are presumed to follow their instructions")); see also United States v. Stewart, 433 F.3d 273, 307 (2d Cir. 2006) (noting "the well-settled proposition that jurors are presumed to follow instructions" (citing Downing, 297 F.3d at 59-60)). Defendant has failed to produce any evidence to suggest that the jury failed to follow this instruction. While the presumption that juries will follow limiting instructions may "evaporate" in cases "where there is an overwhelming probability that the jury will be unable to follow" a limiting instruction that demands "mental acrobatics" of the jurors," United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994), no such probability exists in this case.[7] Accordingly, the introduction of the prior-act evidence did not deprive defendant of a fair trial.

---

[7] Because the 404(b) evidence did not pertain in any way to Osman, there is no merit to Osman's claim that a new trial is required because certain portions of the prior sworn testimony were hearsay statements that "should never have been admitted at the *first* trial." (Osuna Aff. ¶ 24.)

## CONCLUSION

For the foregoing reasons, defendant's motion for a judgment of acquittal or a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure is denied.

**SO ORDERED**

New York, New York
July **20** 2006

_____
Peter K. Leisure
U.S.D.J.

Copies of this Opinion and Order have been sent to:

Miram E. Rocah, Esq.
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

Robert A. Osuna, Esq.
Law Firm of Robert Osuna, P.C
11 Park Place, Suite 600
New York, NY 10007

Barry S. Turner, Esq.
Barry Turner - Attorney At Law
780 Third Ave. 14th Floor
New York, NY 10017