UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

- against -

MUSTAFA OZSUSAMLAR and
OSMAN OZSUSAMLAR,

        Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/12/2007

**OPINION AND ORDER**

S1 05 Cr. 1077 (PKL)

**APPEARANCES**

MICHAEL J. GARCIA, ESQ.
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Miriam E. Rocah, Esq.

Attorney for United States


OSMAN OZSUSAMLAR, #53271-054
Metropolitan Detention Center Brooklyn
P.O. BOX 329002
Brooklyn, NY 11232

Pro Se Defendant


FRANK ROTHMAN, ESQ.
Rothman, Schneider, Soloway & Stern, L.L.P.
100 Lafayette Street, Suite 501
New York, NY 10013

Standby Attorney for Defendant

**LEISURE, District Judge:**

On April 20, 2006, following a one-week trial, defendants Mustafa Ozsusamlar ("Mustafa") and Osman Ozsusamlar ("Osman") were convicted of one count of conspiracy to commit a murder-for-hire, in violation of 18 U.S.C. § 1958(b); one count of murder-for-hire, in violation of 18 U.S.C. §§ 2, 1958; and one count of conspiracy to commit extortion, in violation of 18 U.S.C. § 1951. On July 20, 2006, Osman's first motion for a judgment of acquittal or a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure was denied. Osman again moves for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.[1] For the following reasons, the motion is DENIED.

## BACKGROUND

The events underlying the charges took place between August 2005 and October 2005. The case involved a man who owed approximately $283,000 to the two defendants.

---

[1] Rule 29 and Rule 33 provide that post-verdict motions – other than a Rule 33 motion based upon newly discovered evidence – be made within seven days after a guilty verdict. See Fed. R. Crim. P. 29, 33. Although most of Osman's objections are untimely, the Government does not object on this ground, thus, the Court will address the merits of defendant's claims. See United States v. Robinson, 430 F.3d 537, 541 (2d Cir. 2005) (finding that the Government "forfeited the right to object by failing to raise the objection either in answer to the request for an extension or in its answer to the motion").

2

Mustafa, while incarcerated at the Metropolitan Correctional Center (the "MCC") pending sentencing following his conviction in a separate case, asked a fellow prisoner -- who was a cooperating witness ("CW") -- if he knew of someone who could collect the debt, by force if necessary, and kill the man (and also possibly his wife) after the debt was collected. Mustafa offered to pay the killer ten percent of the money collected. After informing the Government of Mustafa's request, the Government arranged for an undercover agent (the "Agent") named "Joe" to pose as a collector/hit man. The CW provided the Agent's information to Mustafa.

Mustafa, via phone, directed Osman, his son, to contact the Agent. Osman did so, and arranged a meeting at which the two discussed the details of the scheme. Some time later, the Agent called Osman to tell him that he had collected the debt and carried out the scheme. Osman and the Agent made arrangements to meet, and Osman was arrested when he arrived at the agreed-upon location. Mustafa was arrested the next morning. The intended victims were not harmed.

Following the trial, Osman moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, and for a new trial pursuant to Federal Rule of

3

Criminal Procedure 33. In that motion, defendant argued that the evidence of his knowing participation to commit murder for hire was insufficient, and that the admission of the 404(b) evidence against his father was overly prejudicial. On July 20, 2006, the Court denied defendant's motion.

Robert Osuna, Esq. served as Osman's trial counsel. Mr. Osuna was relieved of his representation approximately one year ago, after Osman informed the Court that he wished to proceed pro se. Thereafter, Martine Beamon, Esq. from the CJA panel was appointed as Osman's counsel. On March 29, 2007, the Court relieved Ms. Beamon of her representation due to a potential conflict of interest. Robert Soloway, Esq. from the CJA panel was appointed at that time. Frank Rothman, Esq., who is a named partner at Mr. Soloway's law firm, represented Osman from that time until July 17, 2007. On July 17, 2007, Osman was granted a hearing to discuss his complaints about his representation.[2] At that time, Osman stated that he "would like to continue pro se but [with] stand-by counsel." (7/17 Tr. at 24-25.) Mr. Rothman then conferred with his client, and confirmed to the Court that Osman "wants to proceed pro se with me as

---

[2] Citations to the transcript from this conference are designated by "(7/17 Tr.)" while citations to the transcript from the Trial are designated by "(Tr.)".

4

standby counsel." (7/17 Tr. at 26.) Thus, Osman currently is pro se and Mr. Rothman is Osman's stand-by counsel.

**DISCUSSION**

In support of his motion for a judgment of acquittal pursuant to Rule 29, or for a new trial pursuant to Rule 33, defendant makes seven arguments. Specifically, defendant claims that (1) there has been newly discovered evidence, (2) a miscarriage of justice has occurred, (3) prosecutorial misconduct has occurred, (4) false evidence was used against him, (5) the weight of the evidence is in his favor, (6) he had ineffective assistance of trial counsel, and (7) witnesses were missing at trial. In a letter dated September 6, 2007 ("Gov't Opp."), the Government opposes defendant's motion.

I. Standards for Rule 29 and Rule 33

   A. Rule 29 Standard

When a defendant moves pursuant to Rule 29, the district court must determine, based on all of the relevant evidence, whether a rational juror "might fairly conclude guilt beyond a reasonable doubt." United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotations omitted). The district court must draw all reasonable inferences in favor of the Government, see id.,

5

and must resolve all issues of credibility in favor of the jury's verdict, see United States v. Weiss, 930 F.2d 185, 191 (2d Cir. 1991); United States v. Roldan-Zapata, 916 F.2d 795, 802 (2d Cir. 1990). To succeed on the motion, a defendant must persuade the court that, "viewing the evidence in the light most favorable to the government, . . . no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." United States v. Leslie, 103 F.3d 1093, 1100 (2d Cir. 1997) (McLaughlin, J.) (internal quotations omitted). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." United States v. Scarpa, 913 F.2d 993, 1003 (2d Cir. 1990) (internal quotations omitted); see also United States v. Cervone, 907 F.2d 332, 343 (2d Cir. 1990); United States v. Tillem, 906 F.2d 814, 821 (2d Cir. 1990) (stating that motions challenging the sufficiency of the evidence for a conviction "rarely carry the day").

B. Rule 33 Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). It confers broad discretion upon a trial court to set aside a

6

jury verdict and order a new trial in order to avert a perceived miscarriage of justice. See United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). A defendant seeking a new trial bears the burden of demonstrating the "essential unfairness of the [original] trial." United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956). In adjudicating a Rule 33 motion, a court is entitled to weigh the evidence and, in so doing, to evaluate the credibility of witnesses. See Sanchez, 969 F.2d at 1413. A court, however, should exercise its discretion under Rule 33 sparingly, granting a new trial only in exceptional circumstances. See id. at 1414. Indeed, "motions for a new trial are disfavored in this Circuit." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995).

II. Defendant's Arguments

A. Newly Discovered Evidence

Defendant first argues that newly discovered evidence requires that he be granted a new trial. "A district court must exercise 'great caution' in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only 'in the most extraordinary circumstances.'" United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992) (quoting United States v. Di Paolo, 835 F.2d 46, 49 (2d Cir. 1987)). A new trial will only be

7

granted based on newly discovered evidence where the evidence (1) was discovered after trial, (2) could not have been discovered before or during trial through the exercise of due diligence, (3) is material, non-cumulative and not merely impeaching, and (4) if admitted, "'would probably lead to an acquittal.'" United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) (quoting United States v. Gilbert, 668 F.2d 94, 96 (2d Cir.1981), cert. denied, 456 U.S. 946 (1982)); United States v. Salameh, 54 F. Supp. 2d 236, 248-49 (S.D.N.Y.1999) (Duffy, J.).

Defendant lists thirteen pieces of evidence with which he takes issue. (July 31, 2007 Mot. at 1-2.) However, defendant presents no new evidence that is material, non-cumulative, and not merely impeaching. Indeed, the following pieces of evidence are cited by defendant, but are not newly discovered evidence because, as the Government notes in its response, (Gov't Opp. at 3,) the evidence either was evidence at trial or was produced before trial: (1) recorded conversation between the CW and Mustafa, (2) September 18, 2005 recording between FBI Bailey and Osman, (3) August 26, 2005 Proffer Agreement, (4) September 18, 2005 CD, (5) 3500 material listed in defendant's motion as numbers 5, 7, 11, and 12, (7) phone call records, (8) GX 23 and GX 25, (9) GX 24, and (10)

8

Bailey 3500 materials. Thus, because this evidence clearly is not "new," it does not warrant a new trial under Rule 33.

Defendant also claims that the jury panel voir dire did not include certain witnesses and that Mr. Ginsberg's signatures did not match on a forensic test report. (July 31, 2007 Mot. at 2.) Even if defendant's claims are true, this evidence is immaterial and thus, defendant cannot meet the standard established by the Second Circuit. See Locascio, 6 F.3d at 949. This evidence would not have any impact on the Government's case, let alone "probably lead to an acquittal." See id. (quoting Gilbert, 668 F.2d at 96). Therefore, the Court denies defendant's motion for a new trial based on newly discovered evidence.

B. Miscarriage of Justice and Weight of Evidence

In exercising the broad discretion conferred under Rule 33, a court may weigh the evidence and assess the credibility of witnesses. See Sanchez, 969 F.2d at 1413. Only where exceptional circumstances exist should the trial judge intrude upon the jury function of credibility assessment. Id. at 1414. Defendant claims that the Government manufactured the crime through the use of perjured testimony and witnesses who were not credible. (July 31, 2007 Mot. at 3.) Because defendant fails to

support this contention with any evidence, the Court has no reason to disturb the jury's finding.

Even assuming, arguendo, that the Court determined that certain testimony was untruthful, defendant would not be entitled to a new trial. Defendant asserts that a new trial is necessary to prevent a miscarriage of justice because he is "innocent of the crime." (Id.) The Second Circuit has held that, in order to grant a new trial under Rule 33, it must be a "'manifest injustice' to let the guilty verdict stand." Sanchez, 969 F.2d at 1414 (quoting United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989)). Specifically, the trial judge is to answer the following question: "Am I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt?" Taking all of the facts and circumstances of this case into consideration, the answer to this question is undoubtedly "yes."[3] No miscarriage of justice has occurred and the weight of the evidence supports the jury's determination of guilt.

---

[3] Because defendant has presented no new evidence in his motion to support his claim that the Government manufactured the case against him, the Court relies on its previous analysis of the evidence presented to the jury. (July 20, 2006 Op. at 4-6.)

10

C. <u>Prosecutorial Misconduct and Use of False Evidence</u>

Defendant alleges that the Government used false evidence against him at trial. (July 31, 2007 Mot. at 3-4.) Specifically, defendant asserts that the Government altered the trial transcripts and the transcripts of recorded conversations used as evidence at trial. (Id.) Similarly, defendant argues the Government put forth perjured testimony.

"[A] conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution." <u>Shih Wei Su v. Filion</u>, 335 F.3d 119, 126 (2d Cir. 2003). However, "motions for a new trial based on perjured testimony should be granted only with great caution and in the most extraordinary circumstances." Sanchez, 969 F.2d at 1414. Defendant's argument that a government witness proffered perjured testimony is wholly without merit because there is no evidence, other than defendant's own assertion, that the Government put forth perjured testimony. Similarly, defendant's claim that the Government altered transcripts is baseless. Therefore, defendant's claims certainly do not rise to "the most extraordinary circumstances." Id. Defendant's speculative allegations about the Government's case are insufficient to

11

support his motion and, as such, the Court denies defendant's motion.

D. Ineffective Assistance of Counsel and Missing Witnesses

Defendant asserts that his counsel at trial, Mr. Osuna, was ineffective because Mr. Osuna did not sufficiently investigate the Government's materials. (July 31, 2007 Mot. at 5.) Defendant also claims that his father's trial attorney, Barry Turner, Esq., was ineffective at trial because Mr. Turner did not call certain witnesses. (Id.)

Where, as here, a defendant seeks a new trial pursuant to Rule 33 based on a claim of ineffective assistance of counsel, a court should inquire as to whether that defendant's legal representation was "so deficient that it violated the Sixth Amendment to the United States Constitution." Salameh, 54 F. Supp. 2d at 248 (citing U.S. Const. amend. VI). Thus, to prove ineffective assistance of counsel, a defendant must (1) show that his counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that he suffered prejudice through a showing that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the

12

proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-94 (1984). Moreover, a court should be "highly deferential" to a counsel's performance, as there are strong presumptions regarding the provision of legal representation, particularly with respect to strategic choices made by counsel. Id. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Defendant has given the Court no reason to doubt that counsel provided anything less than a complete and full defense for his client. Both Mr. Osuna and Mr. Turner's performances clearly meet an objective standard of reasonableness. In fact, the record shows that counsel's trial strategies were well-considered and that both cross-examined numerous witnesses at trial. (See, e.g., Tr. at 79-109, 329-403, 429-34, 450-52.)

Even if the Court found counsel's conduct at trial to have fallen below the standard of reasonable professional assistance, defendant has given the Court no reason to believe that there is "a reasonable probability that, but

13

for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-94. The Court notes that, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Indeed, Strickland holds that where a defendant is challenging his conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Defendant has made no such showing.

Similarly, defendant argues that counsel failed to call several witnesses, including Agent John Campanella, "CW-2 Ridvan Sezer" ("CW-2"), three to four MCC employees, three inmates (two inmates who gave handwritten statements), and Mustafa Ozsusamlar. (July 31, 2007 Mot. at 5.) It is important to note that a tactical decision by a trial attorney of "whether to call specific witnesses -- even ones that might offer exculpatory evidence -- is ordinarily not viewed as a lapse in professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (citing United States v. Romero, 54 F.3d 56, 60 (2d Cir. 1995); United States v. Aiello, 900 F.2d 528, 533 (2d Cir.1990)). However, "the decision not to call a witness must be grounded in some strategy that advances the

14

client's interests" rather than "animated primarily by a desire [by counsel] to save himself labor." Eze v. Senkowski. 321 F.3d 110, 129 (2d Cir. 2003); see also Pavel v. Hollins, 261 F.3d 210, 218-19 (2d Cir. 2001).

The record demonstrates that counsel's decision not to call the witnesses named by defendant was a reasonable strategic choice. First, during the trial, counsel questioned FBI agents about Agent Campanella and his involvement in defendant's case. (Tr. at 80-85, 89, 96.) The testimony at trial demonstrates that counsel considered Agent Campanella and further, the testimony given supported counsel's decision not to call Agent Campanella as a witness. (Id.)

Second, CW-2's role in the case also was considered by counsel, as evidenced by the admission of a recording and transcript of the conversation for which CW-2 was present, as well as Agent Bailey's testimony about CW-2. Defendant provides no explanation of what additional information CW-2 could have offered as a witness.

Third, there is no evidence that counsel's decision not to call the corrections officers or inmates from MCC was the result of anything but a reasonable trial strategy. Defendant cannot show that failure to put forth these witnesses caused any prejudice whatsoever. Even if the MCC

15

corrections officers and inmates could have testified at trial and attempted to impeach the CW, counsel's decision not to put forth these additional witnesses was a reasonable strategy because counsel already undertook the task of impeaching the CW at trial. Additionally, the record demonstrates that Osman and Mustafa had improper goals in calling at least one of these inmates as a witness. For example, the Government stated on the record that it had information that Mustafa was attempting to suborn perjury from one of the inmates. (Tr. at 250-58.) In addition, statements on the record make clear that Osman and Mustafa wanted to attempt to prove the improper subject matter of the CW's supposed dislike for Turkish people. (Tr. at 241-58.) Therefore, even if the witnesses that defendant cites in his motion were put forth as witnesses, their testimony may have been harmful to defendant's case. This further demonstrates that counsel had a reasonable trial strategy in not putting forth the MCC corrections officers and inmates as witnesses at trial.

Finally, defendant's assertion that his father's decision not to testify has any bearing on his ineffective assistance of counsel claim is without merit. Although it is irrelevant to defendant's instant motion, the Court notes that Mustafa's decision not to testify was his own

16

and there is no indication whatsoever that Mr. Turner failed to meet his obligation to discuss and counsel Mustafa regarding Mustafa's right to testify at trial. In sum, defendant has failed to show that counsel provided ineffective assistance at trial in any way. Rather, the record makes clear that counsel's performance plainly falls within "an objective standard of reasonableness." Strickland, 466 U.S. at 687. Therefore, defendant's motion for a new trial claiming ineffective assistance of counsel and missing witnesses is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for a judgment of acquittal or a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure is hereby DENIED. Osman Ozsusamlar is hereby ordered to appear before this Court on September 18, 2007 at 10:00 a.m. for sentencing.

**SO ORDERED**

New York, New York
September 11, 2007

_____
U.S.D.J.