UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

OSMAN OZSUSAMLAR,

                Petitioner,

   - against -

UNITED STATES OF AMERICA

                Respondent.

------------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 3455 (SAS)**

**05 CR 1077 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

**I.    INTRODUCTION**

        On April 26, 2010, Osman Ozsusamlar ("petitioner" or "Osman")
filed this pro se motion to vacate, set aside or correct his sentence pursuant to
section 2255 of Title 28 of the United States Code ("section 2255"). Osman
challenges his judgment of conviction on the following grounds: (1) lack of subject
matter jurisdiction; (2) improper venue; (3) ineffective assistance of trial counsel;
and (4) ineffective assistance of appellate counsel.[1] For the following reasons, the
Petition is denied.

---

[1]    *See* Petition for a Writ of Habeas Corpus ("Petition") at 5-6.

-1-

## II.     BACKGROUND

### A.     Indictment and Trial

On January 4, 2006, a federal grand jury indicted Osman and his father, Mustafa Ozsusamlar ("Mustafa"), on three counts for attempting to hire a hit man to kill two persons who owed them money.  Specifically, defendants were charged with one count of conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958; one count of murder for hire, in violation of 18 U.S.C. § 1958; and one count of conspiracy to commit extortion, in violation of 18 U.S.C. § 1951.[2]

The Government first learned of the murder for hire plan in August 2005 by Mohamed Mabrouk ("Mabrouk"), an inmate at the Metropolitan Correctional Center (the "MCC").[3]  Mabrouk was approached by a fellow inmate, Mustafa, who sought to arrange a "hit" on two individuals who owed him approximately $283,000.[4]  Mustafa said he was willing to pay the killer ten percent of the money owed to him when collected.  Although acting interested, Mabrouk reported the incident to law enforcement.[5]

---

[2]      *See* 1/4/06 Superseding Indictment, Docket No. 16.

[3]      *See* Trial Transcript ("Tr.") at 28.

[4]      *See id.* at 28-29, 128, 142.

[5]      *See id.* at 143, 149-150.

In recorded telephone conversations at the MCC, Mustafa spoke about the plan with his son, Osman.  The two discussed how Osman would attempt to locate Murat and Dilek Batca, the intended victims.  In several different conversations, they discussed obtaining the Batcas' address and how Osman found their business address but was unable to find their home address.[6]  This information was then passed on to Mabrouk with the hope that he would find someone on the outside to commit the murders.[7]  The Government arranged for an undercover Federal Bureau of Investigation ("FBI") agent to pose as the person hired to recover the money and murder the Batcas.[8]  The undercover agent ("Joe") went to the Batcas' home and spoke to them about the debt.[9]  They acknowledged that money was owed but said that the original debt had been closer to $150,000, and that only $50,000 remained outstanding.[10]  Meanwhile, the FBI gave Mabrouk Joe's telephone number to which Mabrouk then gave to Mustafa.[11]

---

[6]     In a later conversation, Osman reported to his father that the Batcas were living at the business address he had already found.

[7]     *See id.* at 35-36, 146-153.

[8]     *See id.* at 276.

[9]     *See id.* at 278-284.

[10]    *See id.*

[11]    *See id*. at 60-61, 160-161.

-3-

On September 16, 2005, Mustafa and Osman spoke on a recorded line at the MCC.  Mustafa informed Osman that he had found someone to solve "that problem" and gave Osman the name and phone number provided by Mabrouk.[12] Mustafa told Osman to use a phone other than his own to make the call.  In a conversation taking place later that same day, Osman told his father that he had attempted to reach Joe twice with no luck.[13]  The following day, Osman reached Joe by phone and the two arranged to meet in person.[14]   Osman and Joe met and discussed how Joe's "people" would conduct reconnaissance on the intended targets, collect the money owed, and then murder the Batcas.[15]

On October 6, 2005, Joe called Osman to tell him that he had the money, and the two made plans to meet that evening.  When Osman arrived at the designated location, he was placed under arrest.[16]  After being read his *Miranda* rights, Osman waived these rights and made certain inculpatory and false exculpatory statements about his involvement in the scheme.[17]

---

[12]     *See id.* at 63.

[13]     *See id.* at 65.

[14]     *See id.* at 296.

[15]     *See id.* at 296-297.

[16]     *See id*. at 411-413.

[17]     *See id.*

The Government's evidence at trial included the testimony of the cooperating witness, Mabrouk; "the testimony of (and conversations recorded by) an undercover [FBI] agent, whom the Ozsusamlars hired to carry out the plot; recorded telephone conversations between Mustafa and the Petitioner discussing the plot; and handwritten instructions about the plot that Mustafa gave to the cooperating witness."[18]  The Ozsusamlars' trial commenced April 10, 2006 and lasted ten days.  On April 20, 2006, they were each convicted on all counts.

## B.     Post-Trial Motions

On May 16, 2006, Robert Osuna, Petitioner's trial attorney, filed a post-trial motion seeking a judgment of acquittal or, in the alternative, a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.   The motion asserted: (1) insufficiency of the evidence that Osman knowingly and unlawfully joined the conspiracy to commit murder for hire; and (2) the admission of certain evidence against Mustafa unfairly prejudiced Osman.  The motion was denied in an Opinion and Order dated July 20, 2006.[19]

---

[18]     Respondent's Memorandum in Opposition to Petitioner's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence ("Opp. Mem.") at 1.

[19]     *See United States v. Ozsusamlar*, No. S1 05 CR 1077, 2007 WL 2200694 (S.D.N.Y. July 20, 2007).

On July 31, 2007, Osman, proceeding *pro se*, filed additional motions claiming: (1) newly discovered evidence; (2) a miscarriage of justice occurred because he was innocent; (3) prosecutorial misconduct because the Government's witnesses lied; (4) his conviction was obtained using false evidence; (5) "the weight of the evidence and the credibility of witnesses"; (6) ineffective assistance of his trial counsel; and (7) complaints of missing witnesses.  The Court denied these motions on September 12, 2007.[20]

## C.   Sentencing

On July 31, 2007, a *Fatico* hearing was held in which the Government introduced evidence that Osman had engaged in obstructive acts from the time he was convicted.  The Court issued an Opinion and Order on August 28, 2007, finding that the Government had proven, by a preponderance of the evidence, that:

> over the past four months, (1) Osman solicited another inmate at the [Metropolitan Detention Center ("MDC")] (where he is currently incarcerated awaiting sentencing) – who Osman believed was soon to be released – to collect an extortionate loan from the Batcas [the intended victims of the original offense]; (2) Osman solicited the same MDC inmate to find and kill several people who had participated in the investigation of Osman and Mustafa, including several FBI agents, Assistant United States Attorneys ("AUSAs"), and certain Court personnel; (3) Osman took steps to have individuals outside of jail investigate the

---

[20]   *United States v. Ozsusamlar*, No. S1 05 CR 1077, 2007 WL 2682838 (S.D.N.Y. Sept. 12, 2007).

> targets noted above – namely various FBI agents and AUSAs – and to gather personal information about these targets, including home addresses, family members, and photographs; and (4) Osman communicated threats against the Court and the Government in writing directly to this Court and to others.[21]

Based on these findings, the Court gave defendant a two-level enhancement for obstruction of justice, pursuant to section 3C1.1 of the United States Sentencing Guidelines. On September 18, 2007, Osman was sentenced to 188 months imprisonment (120 months on Counts One and Two, to run concurrently, and 68 months on Count Three, to run consecutively).[22]

### D.    Appeal

Osman, through appellate counsel Malvina Nathanson, appealed to the Second Circuit. Petitioner argued that "(1) there was insufficient evidence to convict him for conspiracy to commit extortion, and (2) prosecutorial misconduct in the State's rebuttal summation deprived him of a fair trial."[23]   On April 29, 2009, with the permission of the Second Circuit, Osman filed a supplemental appellate brief *pro se.* Specifically, Osman argued: (1) that he was entitled to a new trial because certain

---

[21]    *United States v. Ozsusamlar*, S1 05 CR 1077, 2007 WL 2456934, at *2 (S.D.N.Y. Aug. 28, 2007).

[22]    *See* Sept. 19, 2007 Judgment in a Criminal Case, at 2 [docket # 87].

[23]    Opp. Mem. at 12.

physical evidence was inauthentic or inaccurate; (2) his trial counsel was ineffective because he failed to object to the admissibility of certain evidence, failed to call exculpatory witnesses, and had entered into an illicit deal with the Government; (3) the Presentence Report contained inaccuracies; and (4) Government prosecutors and agents engaged in misconduct.[24]   On October 20, 2009, Osman's appeal was summarily denied.[25]   The instant Petition was timely filed on April 26, 2010.

## III.   APPLICABLE LAW

### A.     Section 2255

Section 2255 permits a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence. A properly filed motion under section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[26]   Accordingly, collateral relief under section 2255 is permitted "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law

---

[24]     *See Pro Se* Appeal Brief, Ex. C to Opp. Mem.

[25]     *See United States v. Ozsusamlar*, 349 Fed. App'x 610 (2d Cir. 2009).

[26]     *See* 28 U.S.C. § 2255.

or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[27]

### B.    Procedural Bar

It is well-settled that federal prisoners may not employ section 2255 as a substitute for direct appeal.[28]  "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence."[29] Furthermore, to the extent that a habeas petitioner brings claims that were litigated on direct appeal, the petitioner is procedurally barred from raising such claims again in a section 2255 proceeding.[30]  "The procedural-default rule is neither a statutory

---

[27]   *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[28]   *See, e.g., Wall* v. *United States*, 619 F.3d 152, 154 (2d Cir. 2010); *United States v. Frady*, 456 U.S. 152, 165 (1982).

[29]   *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998).  *Accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) ("A second rule that applies in the Section 2255 context prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice.").

[30]   *See, e.g., Yick Man Mui*, 614 F.3d at 53 (stating that "the so-called mandate rule bars re-litigation of issues already decided on direct appeal"); *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (per curiam) ("It is well-established that a § 2255 petition

nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[31]

Under the "cause and prejudice" standard, the petitioner bears the burden of showing "cause for failing to raise [the claim on direct appeal] and prejudice therefrom."[32]  The Supreme Court has emphasized that "cause" is measured by a stringent standard of diligence.[33]  Thus, "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."[34]  Furthermore, the prejudice prong requires far more than the demonstration of a "possibility of prejudice."[35]  Instead, the prejudice must work to the defendant's "actual and substantial disadvantage, infecting [the] entire trial with

---

cannot be used to 'relitigate [issues] which were raised and considered on direct appeal.") (quotation marks and citation omitted).

[31]  *Massaro v. United States*, 538 U.S. 500, 504 (2003) (carving out an exception for ineffective assistance of counsel claims "which may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").

[32]  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

[33]  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (stating that "cause" is "something external to the petitioner" that "cannot be fairly attributed to him").

[34]  *McCleskey*, 499 U.S. at 494.  *Accord Coleman*, 501 U.S. at 753-54.

[35]  *Frady*, 456 U.S. at 170.

error of constitutional dimensions."[36]  Finally, "prisoners asserting [actual]

innocence as a gateway to defaulted claims must establish that, in light of new

evidence, 'it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt.'"[37]

### C.    Ineffective Assistance of Counsel

A petitioner seeking to attack his sentence based on ineffective

assistance of counsel must: (1) show that counsel's performance fell below "an

objective standard of reasonableness" under "prevailing professional norms," and

(2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."[38]

When analyzing a claim that counsel's performance did not meet

constitutional standards, "judicial scrutiny of counsel's performance must be highly

deferential."[39]  The court "must indulge a strong presumption that counsel's conduct

---

[36]    *Id.*

[37]    *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513
U.S. 298, 327 (1995)).

[38]    *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984).

[39]    *Id.* at 689.

falls within the wide range of reasonable professional assistance."[40]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[41] Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[42]  Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a][p]etitioner [i]s entitled."[43]  Finally, even if an attorney's performance was objectively unreasonable and unprofessional, a petitioner must still prove prejudice.[44]  There is, however, a presumption of prejudice when "counsel entirely fails to subject the prosecution's case to meaningful adversarial

---

[40]     *Id.*

[41]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[42]     *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

[43]     *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

[44]     *See Stickland*, 466 U.S. at 687.

-12-

testing."[45]  For this exception to apply, the attorney's failure "must be complete."[46]

As explained by the Supreme Court, the order of analysis of the two *Strickland*

prongs is at the discretion of the court:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[47]

## IV.  DISCUSSION

---

[45]  *United States v. Cronic*, 466 U.S. 648, 659 (1984) (emphasis added).

[46]  *Bell v. Cone*, 535 U.S. 685, 697 (2002).

[47]  *Stickland*, 466 U.S. at 697.  *See also id.* at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense. . . [and] there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").  *Accord  Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

### A.    Subject Matter Jurisdiction

Osman contends that this Court lacked subject matter jurisdiction over his case, claiming that 18 U.S.C. § 3231, which confers jurisdiction on district courts in criminal cases, is unconstitutional.  Specifically, he argues that the statute was never passed by Congress in the manner required by the Constitution.  As previously addressed in this Court's Order denying Osman's application for appointment of counsel, Osman's argument is meritless.[48]  Accordingly, Osman's claim that this Court lacks subject matter jurisdiction is denied.

### B.    Venue

Next, Osman argues that venue in this Court was improper because the crimes for which he was prosecuted stemmed from actions occurring in New Jersey.[49]  However, petitioner never raised a claim of improper venue on appeal. Nor can petitioner show cause or prejudice as to why this claim was not raised on direct appeal.

---

[48]     *See Ozsusamlar v. United States*, No. 10 Civ. 3455, 2010 WL 3528888 (S.D.N.Y. Sept. 2, 2010) (citing *Robinson v. United States,* No. 09 Civ. 2178, 2010 U.S. Dist. LEXIS 43458, at *26 (S.D.N.Y. Apr. 27, 2010) ("All courts that have considered [the claim that § 3231 is unconstitutional due to the manner by which it was passed by Congress] have rejected it.") (citing *Holt v. Bush,* 321 Fed. App'x 5, 5 (D.C. Cir. 2009) (deeming party's challenge to the constitutionality of § 3231 as "frivolous")).

[49]     *See* Petition at 5.

Assuming, *arguendo*, that Osman's claim is not procedurally barred, it also lacks merit.  "[V]enue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed.'"[50]  "An overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy. The act need not be unlawful; it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy."[51]  In the instant case, there were several conversations between Osman and Mustafa in which they planned the murder for hire.  These conversations, which took place within the Southern District of New York, constitute overt acts in furtherance of the conspiracy.[52]  Therefore, venue is proper within the Southern District.  Accordingly, because petitioner's improper venue claim is procedurally barred and meritless, the claim is denied.

### C.    Ineffective Assistance of Trial Counsel

####    1.    Failure to Challenge Jurisdiction and Venue

---

[50]    *United States v. Royer,* 549 F.3d 886, 896 (2d Cir. 2008) (quoting *United States v. Naranjo,* 14 F.3d 145, 147 (2d Cir. 1994)).

[51]    *United States v. Tzolov*, 642 F.3d 314, 319-320 (2d Cir. 2011) (citing *United States v. Rommy,* 506 F.3d 108, 119 (2d Cir. 2007)).

[52]    Mustafa was in prison at the MCC in Manhattan during these conversations.

Osman next argues that his trial counsel was ineffective because counsel failed to challenge either subject matter jurisdiction or venue.[53]  As previously discussed, both claims are meritless.  Therefore, it was not unreasonable for trial counsel to forego these challenges.  Nor has Osman shown any prejudice as a result of the alleged deficiency.  Accordingly, Osman's ineffective assistance of trial counsel claim based on the failure to challenge jurisdiction and venue is denied.

### 2.      Failure to Call Exculpatory Witnesses

Osman also contends that his trial counsel was ineffective for "fail[ing]/refus[ing] to investigate or interview potential defense witnesses who would have readily contacted and impeached the prosecutions' chief witness Mohamed Mabrouk."[54]  Specifically, Osman believes that Alzubi Gunther would have been able to refute the Government's witness.  However, Osman raised this claim in his *pro se* addendum to his counseled appellate brief.  This claim was fully litigated and rejected by the Second Circuit, and Osman therefore cannot now re-litigate the claim in this habeas proceeding.[55]  Regardless, Osman has failed to

---

[53]     *See* Petition at 18.

[54]     *Id.*

[55]     *See Yick Man Mui*, 614 F.3d at 53.

introduce any evidence that Gunter would have testified and, if he did, whether he would have provided any exculpatory or impeachment testimony that would have helped the defense.[56]   Further, in his Declaration, trial counsel explained that he had interviewed this potential witness and made a strategic decision not to call him at trial because he concluded that "Gunther would not be a particularly beneficial or friendly witness for my client."[57]   Therefore, trial counsel's decision not to call this witness was reasonable under the first prong of *Strickland*.   Accordingly, Osman's ineffective assistance claim based on counsel's failure to call Alzubi Gunther as a witness is denied.

### 3.   Failure to Advise Petitioner of Right to Testify

Next, Osman argues that his trial counsel failed to advise him of his right to testify.   Although the Government maintains that this claim is procedurally

---

[56]   *See United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (finding that petitioner's affidavit, featuring allegations made in a "conclusory fashion," failed to demonstrate ineffective assistance of counsel based on uncalled witness); *Muhammad v. Bennett*, No. 96 Civ. 8430, 1998 WL 214884, at *1 (S.D.N.Y. Apr. 29, 1998) (finding "petitioner's speculative claim about the testimony of an uncalled witness" to be insufficient); *Carneglia v. United States*, No. 03 Civ. 6388, 2006 WL 148908, at *4 (E.D.N.Y. Jan.18, 2006) (rejecting challenge because "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them").

[57]   *See* 6/18/10 Robert Osuna Declaration ("Osuna Decl.") at 2, Docket No. 4.

barred because it could have been raised on direct appeal, a petitioner may raise additional ineffective assistance claims in a habeas proceeding.[58]

The Second Circuit has stated that defense counsel bears the burden of "ensuring that the defendant is informed of the nature and existence of the right to testify" and his conduct in this regard is part of providing effective assistance of counsel.[59]  However, Osman has not provided any evidence that trial counsel prevented him from testifying.  Osuna submitted a Declaration to the Court stating that the claim is untrue, that he advised Osman of his right to testify on several occasions, and that it was Osman's decision not to testify given the amount of impeachment material available to the Government.[60]  Osman's self-serving statement is insufficient to substantiate this claim.[61]

Even assuming that trial counsel failed to advise petitioner that it was his decision whether to testify, Osman has failed to establish the required prejudice under the second prong of the *Strickland* test.  Osman has not shown, with any reasonable probability, that his testimony would have resulted in a different

---

[58]    *See Yick Man Mui*, 614 F.3d at 56-57.

[59]    *Brown v. Artuz,* 124 F.3d 73, 78 (2d Cir. 1997).

[60]    *See* Osuna Decl. at 2.

[61]    *See Chang v. United States,* 250 F.3d 79, 86 (2d Cir. 2001).

outcome.[62]  In fact, given the Government's evidence and taped recordings,

Osman's testimony would have exposed him to a cross-examination that likely

would have been more damaging to Osman's case than had he not testified at all.

Accordingly, as the *Strickland* test has not been met, Osman's ineffective assistance

of counsel claim regarding his right to testify is denied.

### 4.    Alleged Conflict of Interest

Osman contends that his trial counsel was ineffective because he "was

orchestrating a deal for monetary cooperation with the U.S. Attorney's Office

which comprised of Osuna rendering a constitutionally deficient performance at

trial regarding Petitioner."[63]

> A defendant claiming he was denied his right to conflict-
> free counsel based on an actual conflict need not establish
> a reasonable probability that, but for the conflict or a
> deficiency in counsel's performance caused by the conflict,
> the outcome of the trial would have been different.  Rather,
> he need only establish (1) an actual conflict of interest that
> (2) adversely affected his counsel's performance.[64]

Osman does not explain why he believes there was an actual conflict of interest or

conspiracy between his counsel and the Government.  Nor has he explained how

---

[62]    *See Halo v. United States*, No. 06 Civ. 5041, 2007 WL 1299158, at *5
(E.D.N.Y. Apr. 30, 2007).

[63]    Petition at 19.

[64]    *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (citing *Cuyler v.
Sullivan*, 446 U.S. 335, 348 (1980)).

such an alleged conflict of interest adversely affected his counsel's performance. Accordingly, Osman's ineffective assistance claim based on his trial counsel's alleged conflict of interest is denied.

### D.     Ineffective Assistance of Appellate Counsel

#### 1.     Failure to Challenge Jurisdiction and Venue

Osman argues that his appellate counsel, Malvina Nathanson, was ineffective for failing to challenge subject matter jurisdiction and venue on appeal.[65] As previously discussed, because both claims are meritless, it was not unreasonable for appellate counsel to omit these arguments.  Nor has Osman shown any prejudice as a result of the alleged deficiency.  Accordingly, Osman's ineffective assistance of appellate counsel claim based on the failure to challenge jurisdiction and venue is denied.

#### 2.     Failure to Raise Petitioner's Right to Testify

Next, Osman argues that his appellate counsel "wholly ignored my pleas to raise [the] issue" of the alleged violation by trial counsel of failing to advise him of his right to testify at trial.[66]  Osman's appellate counsel filed a Declaration stating that this accusation was completely false, as follows:

---

[65]     *See* Petition at 18.

[66]     *Id.* at 6.

> I have no recollection of Mr. Ozsusamlar ever mentioning
> to me that he had been prevented from testifying at trial.  In
> any event, if he had, I would have advised him that the issue
> would necessarily involve reliance on non-record
> information and therefore could not be raised on the
> appeal.[67]

"Where a claim of ineffectiveness is easily disposed of based on a lack of

prejudice, 'a court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of

the alleged deficiencies.'"[68]   The record demonstrates that Osman has failed to

demonstrate such prejudice—*i.e.*, a reasonable probability that, had he testified, the

jury would not have convicted him.[69]   Accordingly, this claim of ineffective

assistance of appellate counsel is denied.

### 3.   Failure to Interview Witnesses

Osman argues that Nathanson refused to interview potential defense

witness "Juan Fermin" after he advised her that Fermin had been excluded from

testifying at his trial.[70]   In her Declaration, Nathanson states:

---

[67]   6/16/10 Declaration of Malvina Nathanson ("Nathanson Decl.") at 2, Docket No. 5.

[68]   *United States v. Fleurimont*, 401 Fed. App'x 580, 583 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

[69]   *See* Tr. at 583-584.

[70]   *See* Petition at 24.

> I have no recollection of Mr. Ozsusamlar asking me to interview anyone named "Juan Fermin." However, had he made such a request, I would have told him that the appeal is limited to the trial record, and that therefore interviews of additional witnesses could not be of assistance at this stage.[71]

Osman has failed to introduce any evidence showing: (1) whether he actually asked his counsel to interview and/or call Fermin as a witness; (2) whether Fermin would have testified or invoked his Fifth Amendment privilege against self-incrimination; and (3) whether Fermin would have provided any exculpatory or impeachment testimony that would have helped the defense.[72]   As Osman has failed to demonstrate any error by counsel in not interviewing this witness, appellate counsel's actions were not  unreasonable.  Nor has Osman demonstrated any prejudice as a result of this alleged error.  Accordingly, this ineffective assistance claim is denied.

### 4.    Failure to Communicate

Next, Osman contends that appellate counsel

> never conducted any pre appeal investigation, including failing to communicate with me and discussing potential appellate issues.  Attorney Nathanson's failure/refusal to talk to me with the assistance of a proficient Turkish

---

[71]    Nathanson Decl. at 2.

[72]    *See Vargas*, 920 F.2d at 170.  *Accord Carneglia*, 2006 WL 148908, at *4.

language interpreter amply demonstrates her complete lack
of effective assistance.[73]

Appellate counsel maintains that she had extensive contact with Osman while
working on his case.[74]  Nathanson's case file contains over twenty letters that she
mailed to Osman detailing those issues she was raising on appeal and why she was
not including certain claims that Osman felt should have been raised.[75]
Additionally, counsel had two telephone conferences with Osman, which were
arranged through his case manager.[76]  Counsel does not recall Osman ever
requesting an interpreter but stated that she had asked him, in her first letter to
Osman whether he preferred to use one – to which he never responded.  Petitioner
has not shown that appellate counsel's performance was unreasonable.  Moreover,
petitioner has not shown prejudice by the level of communication between him and
his attorney.  On the basis of the entire record and the sworn statements of
appellate counsel, Osman's claim of ineffective assistance of appellate counsel is
dismissed.

### E.    Newly Discovered Evidence

--------

[73]    Petition at 22.

[74]    *See* Nathanson Decl. at 2-3.

[75]    *See id.*

[76],   *See id.* at 3.

Finally, on December 21, 2010,  this Court received a second successive habeas petition from petitioner.[77]   Osman argues that there is newly discovered evidence.  "[W]hen a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion."[78]   Upon review of the amended materials, there is nothing to suggest that there is any newly discovered evidence.  Osman already addressed these points in his direct appeal. Because that claim was fully litigated and summarily rejected by the Second Circuit, he cannot now re-litigate the claim in this habeas proceeding.  Osman's claim based on newly discovered evidence is therefore dismissed.

## V.    CONCLUSION

For the foregoing reasons, Ozsusamlar's section 2255 motion is denied.  The remaining issue is whether to grant a Certificate of Appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[79]   A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that

---

[77]    This petition does not appear on the docket.

[78]    *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002).

[79]    28 U.S.C. § 2253(c)(2).

reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[80]  Petitioner has made no such showing. Accordingly, I decline to grant a Certificate of Appealability.  The Clerk of the Court is directed to close the instant motion [Docket entry dated 4/26/10 in 05 CR 1077] and [Docket # 1 in 10 Civ. 3455] and this case (10 Civ. 3455).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 28, 2012

---

[80]    *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle,* 463 U.S. 880, 893 and n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,* 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

**-Appearances-**

**Petitioner (Pro Se):**

Osman Ozsusamlar
# 53271-054
U.S. Penitentiary
P.O. Box 019001
Atwater, CA 95301

**For Respondent:**

Serrin Turner
Assistant United States Attorney
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1946